**ORIGINAL**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DISTRICT

JUDITH WOLVEN,

      Plaintiff

                            Case No. 01-~~713401~~ 71340

v.                              Hon. John Corbett O'Meara

NETWORK SOLUTIONS, INC.,

      Defendant

_____/

## DEFENDANT NETWORK SOLUTIONS, INC.'S APPLICATION FOR RELIEF FROM DEFAULT

    Pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, defendant Network Solutions, Inc. ("Network Solutions") moves to set aside the default entered by the Clerk of the Court against Network Solutions on December 19, 2001, for the reasons set forth in the attached Brief in Support of Application for Relief from Default.

    Pursuant to Local Rule 7.1 of the United States District Court of the Eastern District of Michigan, on February 20, 2002, attorneys for Network Solutions telephoned Plaintiff, Judith Wolven ("Wolven"), and explained the nature of this motion and its legal basis, at which time concurrence in relief was requested and was not granted. Therefore, it is necessary to bring this motion.

               **KERR, RUSSELL AND WEBER, PLC**

               By: _William A. Sankbeil_ (signature)
                    William A. Sankbeil (P19882)
                    Panagiota T. Pozios (P61735)
                    Attorneys for Defendant
                    500 Woodward Avenue, Suite 2500
                    Detroit, MI 48226
                    (313) 961-0200

KERR, RUSSELL
AND WEBER, PLC

Of Counsel:

Brian A. Davis
Litigation Counsel
Network Solutions, Inc.
21355 Ridgetop Circle
Dulles, VA  20166


Dated:  February 27, 2002

KERR, RUSSELL
AND WEBER, PLC

# DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DISTRICT

JUDITH WOLVEN,

        Plaintiff

                                    Case No.  01-713401

v.                                        Hon. John Corbett O'Meara

NETWORK SOLUTIONS, INC.,

        Defendant

_____/

## BRIEF IN SUPPORT OF DEFENDANT NETWORK SOLUTIONS, INC.'S APPLICATION FOR RELIEF FROM DEFAULT

## STATEMENT OF ISSUE PRESENTED

I.      Should this Court set aside the Clerk's entry of default against Defendant, Network Solutions, Inc., where service of the Complaint was never effected upon Defendant, Plaintiff will suffer no prejudice, the Defendant has meritorious defenses, and the Defendant has exhibited no culpable conduct?

KERR, RUSSELL
AND WEBER, PLC

# CONTROLLING AUTHORITIES

**Cases**

B&B Educator Sales, Inc.,
  34 Mich. App. 499; 192 N.W.2d 126 (1971)………………………………………..…6

Berthelsen v Kane,
  907 F.2d 617, 620 (6th Cir. 1990)……………………………………………………2, 11

Brown v Basil Considine, Jr., M.D.,
  108 Mich. App. 504; 310 N.W.2d 441, 443 (1980)………………………………………9

Carimi v. Royal Carribean Cruise Line,
  959 F.2d 1344 (5th Cir. 1992) ............................................................................................... 5

Continental Ins. Co. v B&B Educator Sales, Inc.,
  34 Mich. App. 499; 192 N.W.2d 126 (1971) …..……………………………………6

Depots v. Nat'l Bank of Detroit,
  491 F.2d 753 (6th Cir.1974)………………………………………………………………9

Dogan v. Michigan Basic Property Ins. Ass.,
  130 Mich. App. 313, 318; 343 N.W.2d 532, 534 (1983)…………………………………6

H&L Heating Co. v Bryh Mawr Apt. of Ypsilanti, Inc.,
  97 Mich. App. 496; 296 N.W.2d 354 (1980)……………………………………………..6

Heritage Broadcasting Co. v Wilson Comm., Inc.,
  170 Mich. App. 812; 428 N.W.2d 784…..…………………………………………9,10

Johnson v Douglas,
  281 Mich. 247, 274 N.W. 780 (1937)…………………………………………………..10

Keegel v Key West & West & Caribbean Trading Co., Inc.,
  627 F.2d 372, 374 (D.C. Cir. 1980))...................................................................................... 7

Kemp v Pfizer, Inc.,
  152 F.R.D. 556 (E.D. Mich. 1993)………………………………………………………2

Macaluso Sr. v. The New York State Dep. of Envtl. Conser.,
  115 F.R.D. 16 (E.D.N.Y. 1986)………………………………………………………3, 5

Moore v City of Lehigh, Okl.,
  29 F.Supp. 39 (E.D. Okla. 1939)………………………………………………………4, 5

KERR, RUSSELL
AND WEBER, PLC

ii

<u>Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.,</u>
   526 U.S. 344 (1999)……………………………………………………………… 5

<u>Shepard Claims Service, Inc. v William Darrah & Assoc.,</u>
   796 F.2d 190, 192 (6th Cir. 1986)……………………………………………………2, 11

<u>Siegel v. Spinney,</u>
   141 Mich. App. 346; 367 N.W.2d 860 (1984)…………………………………………..9

<u>United Coin Meter Co., Inc. v Seaboard Coastline RR,</u>
   705 F.2d 839, 845 (6th Cir. 1983)…………………………………………………..2, 3, 7

<u>Waifersong, Ltd., Inc. v Classic Music Vending,</u>
   976 F.2d 290, 292 (6th Cir. 1992)………………………………………………..…….2

<u>Wells v 10-X Mfg. Co.,</u>
   170 Mich. App. 812; 428 N.W.2d 784…………..…..………………………………..9, 10

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 4…..……………………………………………………………..3, 4, 5, 6

Fed. R. Civ. P. 55………………………………………………………………….2, 3, 11

Fed. R. Civ. P. 60……………………………………………………………...………..2

## MICHIGAN COURT RULES

MCR 2.105(D)…………………………………………………………………4, 5, 6

## LOCAL RULES FOR CIVIL CASES, EASTERN DISTRICT OF MICHIGAN

Local Rule 7.1

KERR, RUSSELL
AND WEBER, PLC

# I.

## STATEMENT OF FACTS.

Plaintiff, Judith Wolven ("Wolven"), filed a lawsuit against Network Solutions on April 5, 2001. Plaintiff mailed a copy of the Summons to Network Solutions by certified mail on or around April 27, 2001. Network Solutions only received a copy of the Summons. A copy of the Complaint was not included in that mailing, and was never served on or otherwise forwarded to Network Solutions. See Declaration of Mark C. Mandolia ¶ 6 ("Mandolia Decl.") (attached hereto as Exhibit A). Network did not receive any further pleadings or communications from Plaintiff until February 11, 2002 when Network Solutions received Notice of Hearing for Default Judgment scheduling a hearing for March 1, 2002.[1] Mandolia Decl. ¶ 7. With respect to this notice, Network Solutions again received only the notice without any accompanying motion, memorandum, or order. Mandolia Decl. ¶ 7.

Network Solutions has a well-developed system that was created to handle and process any and all legal actions. Once Network Solutions receives notice of a lawsuit to which it is a party, the procedure of the legal support staff is to immediately log in the case as received, create a file folder, docket all pleadings, notify counsel, and begin background research. Network Solutions occasionally receives a complaint without being formally served, and in those instances pursues the same recordation, notice, and research procedure even before receiving proper service. Mandolia Decl. ¶ 4.

In this particular case, Network Solutions was never served with the Complaint and therefore, never received any pleadings to file. Therefore, Network Solutions' lack of

KERR, RUSSELL
AND WEBER, PLC

---

[1] Apparently, a default was entered against Network Solutions on December 19, 2001, of which Network Solutions also never received notice.

1

response was not due to delay or disrespect, but due to the fact that it was never properly served with, or otherwise forwarded, any copy of the Complaint in this matter.

## II.

## ARGUMENT.

Under Rule 55(c) of the Federal Rules of Civil Procedure, the entry of a default may be set aside for "good cause." The Sixth Circuit has established the following three criteria to determine "good cause" under Rule 55(c):

1.      Whether the plaintiff will be prejudiced;

2.      Whether the defendant has a meritorious defense; and

3.      Whether culpable conduct of the defendant led to the default.

Waifersong, Ltd., Inc. v Classic Music Vending, 976 F.2d 290, 292 (6th Cir. 1992) Berthelsen v Kane, 907 F.2d 617, 620 (6th Cir. 1990); Shepard Claims Service, Inc. v William Darrah & Assoc., 796 F.2d 190, 192 (6th Cir. 1986); United Coin Meter Co., Inc. v Seaboard Coastline RR, 705 F.2d 839, 845 (6th Cir. 1983).

Trials on the merits are favored in federal courts. Berthelsen, 907 F.2d at 620 ("trials on the merits are favored in the federal courts, and a 'glaring abuse' of discretion is not required for reversal of a court's refusal to relieve a party of the harsh sanction of default"); Shepard Claims Service, 796 F.2d at 193 ("the same policy of favoring trials on the merits applies whether considering a motion under Rule 55(c) or Rule 60(b)"). Accordingly, the entry of a judgment by default is "a drastic step which should be resorted to only in the most extreme cases" and as a last resort. United Coin, 705 F.2d at 845; Kemp v Pfizer, Inc., 152 F.R.D. 556, 557 (E.D. Mich. 1993). In the absence of a *willful* failure by the defaulted party to appear and plead, it is an abuse of discretion for a district court to deny a Rule 55(c)

KERR, RUSSELL
AND WEBER, PLC

2

motion when the first two factors militate in favor of setting aside the default. <u>Shepard Claims Service</u>, 796 F.2d at 194.

As demonstrated below, the foregoing three criteria weigh heavily in favor of setting aside the entry of default against Network Solutions in this matter.

**A.**

**Plaintiff Will Not Be Prejudiced
By Setting Aside The Entry
Of Default.**

The only result of setting aside the default in this matter is a delay in plaintiff satisfying her claim, should she succeed at trial, if a default judgment is not entered. In the context of Rule 55(c), however, "mere delay in satisfying a plaintiff's claim, if it should succeed at trial, is not sufficient prejudice to require denial" of any application to set aside a default. <u>United Coin Meter Co.</u>, 705 F.2d at 845. In this case, Plaintiff can only argue mere delay as the reason for not setting aside the default. Plaintiff will not be prejudiced by any delay, however, because if the default is set aside, Plaintiff will be in the same position she would have been in had Network Solutions been properly served. Therefore, any delay is the result of Plaintiff's own failure to serve Network Solutions, properly, or in any manner with the Complaint or any other pleading filed or order entered in this matter.

**1.**

**Plaintiff failed to properly serve Network Solutions in
accordance with the Federal Rules of Civil Procedure
and/ or the Michigan Court Rules.**

Rule 4(c) of the Federal Rule of Civil Procedure governs service of process and provides that for a party to receive proper notice a summons "shall be accompanied by a copy of the complaint." In <u>Macaluso Sr. v. The New York State Dep't of Envtl. Conserv.</u>, 115 F.R.D. 16 (E.D.N.Y. 1986), the court held that service of process was insufficient upon

KERR, RUSSELL
AND WEBER, PLC

3

defendant corporation because plaintiff failed to include a copy of the complaint with the summons in his attempt to effect service. Id. at 17; *see also*, <u>Moore v. City of Lehigh, Okl.</u>, 29 F.Supp. 39, 40 (E.D. Okla. 1939) (stating that the summons and complaint must be served together in order to effect proper service).

Rule 4(h) of the Federal Rules of Civil Procedure provides the manner of service and states, in pertinent part:

> Unless otherwise provided by federal law, service upon a domestic or foreign corporation or upon a partnership or other unincorporated association that is subject to suit under a common name, and from which a waiver of service has not been obtained and filed, shall be effected:
>
> (1)   in a judicial district of the United States in the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the *summons **and of the complaint** to an officer, a managing or general agent, or to any other agent authorized by appointment or by law* to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant...

Fed. R. Civ. P. 4(h) (emphasis added).

Rule 4(e)(1) of the Federal Rules of Civil Procedure allows for service in accordance with Michigan law.    Michigan Court Rule 2.105(D) provides for service on a private corporation as follows:

> Service of process on a domestic or foreign corporation may be made by
>
> (1)   serving a summons **and** a copy of the complaint on an officer or the resident agent;
> (2)   serving a summons **and** copy of the complaint on a director, trustee, or person in charge of an office or business establishment of the corporation and sending a summons **and** a copy of the complaint by register mail, addressed to the principal office of the corporation;
> (3)   serving a summons **and** a copy of the complaint on the last presiding officer, president, cashier, secretary, or treasurer of a corporation that has ceased to do business by failing to keep up its organization by the

                    appointment of officers or otherwise, or whose term of existence has expired;

(4)      sending a summons ***and*** a copy of the complaint by registered mail to the corporation of an appropriate corporation officer and to the Michigan Corporation and Securities Bureau if

        (a)      the corporation has failed to appoint and maintain a resident agent or to file a certificate of that appointment as required by law;

        (b)      the corporation has failed to keep up its organization by the appointment of officers or otherwise; or

        (c)      the corporation's term of existence has expired.

Michigan Court Rule 2.105(D) (emphasis added).

Both the Federal Rules of Civil Procedure and Michigan Court Rules require the plaintiff to serve both the Summons and a copy of the Complaint on a defendant. Plaintiff did not do so. The fact that a copy of the Complaint is on file at the clerk's office does not alleviate the requirement that a Complaint must be served with a Summons. Carimi v. Royal Carribean Cruise Line, 959 F.2d 1344, 1347-1348 (5th Cir. 1992); Macaluso Sr., 115 F.R.D. at 18; Moore, 29 F.Supp. at 40. Therefore, without proper service Plaintiff has not met the jurisdictional prerequisite to provide this Court with the power to proceed to judgment against Network Solutions. Moreover, Network Solutions is not obliged to answer or defend against this lawsuit until service has been made. Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 349 (1999).[2]

        Even if Plaintiff had mailed a copy of the Complaint with the Summons, service of process would still be improper. Plaintiff could have served Network Solutions either under Federal Rule of Civil Procedure 4(h) or Michigan Court Rule 2.105(D)(2). Plaintiff failed to

KERR, RUSSELL
AND WEBER, PLC

---

[2] Should this default be set aside, Network Solutions is willing to waive service of the Summons and Complaint in this matter pursuant to Fed. R. Civ. P. 4(d), provided Plaintiff forwards a copy of the Complaint to Network Solutions' counsel.

properly serve Network Solutions under Federal Rule of Civil Procedure 4(h) because she did not deliver the Summons and Complaint to an "**officer, a managing or general agent, or to any other agent authorized by appointment or law to receive service of process**." (Emphasis added).   Plaintiff did not serve the Summons and Complaint on any of the individuals described above, she simply mailed the Summons by <u>certified mail</u> to the general business address of Network Solutions without directing it to the attention of any person or even any department. Mandolia Decl.¶ 6.  This does not satisfy Rule 4.

Plaintiff did not properly effect service upon Network Solutions under Michigan Court Rule 2.105(D)(2) which allows a plaintiff to mail a copy of the summons and complaint by **registered mail** *in addition to* serving both the summons and complaint on a "**director, trustee, or person in charge of an office or business establishment of the corporation**." (Emphasis added).   Michigan Court Rule 2.105 must be complied with in order to properly effectuate service of process on a defendant. <u>Dogan v. Michigan Basic Property Ins. Ass.</u>, 130 Mich. App. 313, 318; 343 N.W.2d 532, 534 (1983), *citing,* <u>Continental Ins. Co. v. B & B Educator Sales Inc.</u>, 34 Mich. App. 499; 192 N.W.2d 126 (1971); and <u>H & L Heating Co. v. Bryn Mawr Apartments of Ypsilanti, Inc.</u>, 97 Mich. App. 496; 296 N.W.2d 354 (1980).  Plaintiff simply mailed the Summons, only, by **certified mail, not registered**, to the general business address.   Plaintiff also failed to serve both the Summons and Complaint on a "director, trustee, or person in charge of an office or business establishment of the corporation."   Again, Plaintiff did not effectuate service under Michigan's rules.

**B.**

**Network Solutions Has Meritorious Defenses to
Plaintiff's Complaint.**

"In determining whether a defaulted defendant has a meritorious defense, 'likelihood of success is not the measure.' Rather, if any defense relied upon states a defense good at law, then a meritorious defense has been advanced." <u>United Coin,</u> 705 F.2d at 845 (quoting <u>Keegel v Key West & West & Caribbean Trading Co., Inc.,</u> 627 F.2d 372, 374 (D.C. Cir. 1980)).

Plaintiff's Complaint does not allege or identify a specific cause of action as a basis for her Complaint against Network Solutions. [3] It appears from the allegations that Plaintiff claims that she entered into a contract with Network Solutions for registration for three domain name registrations and that Network Solutions allegedly breached the domain name registration contract with respect to tow of those domain names, myhomesforsalebyowner.com and myhomesforsalebyowner.net. Complaint, p. 1. However, as Plaintiff concedes in her Complaint, no contracts existed between her and Network Solutions for domain name registration services with respect to the myhomesforsalebyowner.com and myhomesforsalebyowner.net domain names. In fact, Plaintiff admits that she properly registered the myhomesforsalebyowner.com and myhomesforsalebyowner.net domain names at issue through Network Solutions in 1999, but then "did not want them, so I did not pay and I called to let them know." Complaint, p. 2. These domain name registration agreements were then cancelled and the domain names at issue deleted, at which point they were available for registration through any domain name registrar by any person.[4] Declaration of Sherry Proehl ("Proehl Decl.") ¶ 22, 24, 26 (attached

KERR, RUSSELL
AND WEBER, PLC

---

[3] Network Solutions' counsel obtained a copy of the Complaint from the Clerk's office once the Notice of Hearing of Default Judgment was received.

[4] The myhomesforsalebyowner.com and myhomesforsalebyowner.net domain name registrations were cancelled on June 15,1999. Proehl Decl. ¶ 19.

as Exhibit B). A year later, however, Plaintiff thought she "would like to have these names after all."

On or about March, 2000, Plaintiff sent in checks to the billing address Network Solutions identifies for the remittance of payment for domain name registration services for domain names, purportedly to pay the registration fee for the myhomesforsalebyowner.com and myhomesforsalebyowner.net domain names. Plaintiff, however, had no domain name registration contract with respect to registration services for these domain names at that time, nor had she submitted a domain name registration application for any of these domain names. Proehl Decl. ¶ 22.

Network Solutions' registration services are available to all persons through its online and E-mail registration process at its various websites, including www.netsol.com and www.networksolutions.com. Pursuant to the registration process, a prospective registrant must first enter his or her desired domain name to determine if it is "available," *i.e.*, is not currently recorded in the Registry's master database of registered domain names as registered. If the domain name is not already registered, the registrant will be prompted through a number of "screens" to fill in the information necessary to register the domain name, including the registrant, and contact information for the administrative, technical, and billing contacts. After the application process has been properly completed, the registration application, if acceptable, is processed by Network Solutions. If the domain name is available for registration at the time that Network Solutions, as a registrar, submits the application to the Registry, the domain name registration should be completed. The registrant will be notified by Network Solutions via E-mail regarding the results of his or her online registration application. Proehl Decl. ¶ 7, 10, and 11.

In connection with its domain name registration services, Network Solutions enters into private, commercial contracts with the registrants of domain names, known as "Registration Agreements." Each domain name registration is the subject of a separate and discrete Registration Agreement between the registrant and Network Solutions. Network Solutions requires applicants to agree to the terms of its Registration Agreement before submitting a domain name request. Through its online and E-mail template applications, Network Solutions requires that applicants indicate their agreement to accept the Registration Agreement. As noted above, all information regarding the requested domain name, including the identity of the registrant, billing, administrative and technical contacts are supplied by or on behalf of the registrants in an online template that expressly incorporates the terms of the Registration Agreement. The registrant must agree to be bound by all of the terms of the standardized Registration Agreement, which consent is communicated when the template is transmitted as an application for domain name registration to Network Solutions. Proehl Decl. ¶ 11-13.

In Michigan, a contract cannot exist without consent of both parties. Brown v. Basil Considine, Jr., M.D., 108 Mich. App. 504, 507; 310 N.W.2d 441, 443 (1980); Depots v. Nat'l Bank of Detroit, 491 F.2d 753, 756 (6th Cir. 1974); and Wells v. 10-X Mfg. Co., 609 F.2d 248, 256 (6th Cir. 1979). Moreover, the parties' consent must be free, mutual, and communicated to each other. Heritage Broadcasting Co. v. Wilson Comm., Inc., 170 Mich. App. 812, 818-819; 428 N.W.2d 784, 787 (1988). Consent is not mutual unless the parties agree upon the same thing in the same sense. Id. at 818-819; 787. To determine whether or not consent is mutual, courts review the parties' objective manifestations of consent. The test being what the outward manifestations of consent would lead a reasonable person to believe. Siegel v. Spinney, 141 Mich. App. 346, 350; 367 N.W.2d 860, 862 (1984). Specifically, the

KERR, RUSSELL
AND WEBER, PLC

9

parties' outward manifestation must show that the parties all agreed upon the same thing in the same sense. Id. at 350; 862; Heritage Broadcasting, 170 Mich. App. at 818; 428 N.W.2d at 787. If there is no evidence establishing a manifestation of assent to the same thing by both parties, then there is no mutual consent to the contract and no contract formation. Johnson v. Douglas, 281 Mich. 247, 256; 274 N.W. 780, 784 (1937).

Plaintiff alleges that Network Solutions' accounts receivable processed her checks through an automated process, and therefore, "accepted" her offer, thereby agreeing to a contract. Moreover, because the domain name registrations for which Plaintiff allegedly submitted payment were cancelled and the domain names deleted from Network Solutions' database based on Plaintiff's nonpayment and 1999 request for deletion, there were no domain name registrations to which to apply the funds submitted by Plaintiff. Proehl Decl. ¶ 20; Complaint p. 2. Network Solutions, therefore, refunded Plaintiff's money. Id. Complaint p. 2. Network Solutions' processing of this payment does not and cannot form a contract, because Network Solutions' "consent" was not free and was obtained, if it could be construed to be obtained, by mistake.[5]

Plaintiff sent her checks to an address which Network Solutions never represented as proper for submitting registration requests. Proehl Decl. ¶ 21-22. Furthermore, Network Solutions does not direct prospective applicants to submit domain name registration requests through the mail. Plaintiff in fact submitted no registration requests, and not surprisingly, Network Solutions took no action with respect to providing domain name registration

KERR, RUSSELL
AND WEBER, PLC

---

[5] The same issue was addressed in Frogface v. Network Solutions, Inc., Case No. C-00-3854 (N.D. Ca. Jan 14, 2002). In Frogface, the United States District Court of California, Northern District rejected the argument that a contract is formed based purely on the submission and processing of payment is. (Opinion attached as Exhibit C). Specifically, the court held that the plaintiff's submission of a $70.00 check to pay for the registration fee fro a domain name, and the processing of that check by Network Solutions accounts receivable department, did not constitute mutual consent, especially given plaintiff's "failure to comply with any of the usual methods of registering domain names."

services. In short, there was no "meeting of the minds" necessary to form a contract. Wells 609 F.2d at 256. Accordingly, no domain name registration contract was formed.[6]

Thus, Defendant Network Solutions has complete and meritorious defenses to the relief sought by Plaintiff.[7]

### C.
### Defendant Network Solutions Has Not Exhibited Any Culpable Conduct Leading To Its Default.

To be considered culpable, the conduct of Network Solutions must exhibit either "an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." Shepard Claims Service, 796 F.2d at 194 (reversing order denying motion to set aside entry of default, holding that "careless and inexcusable" conduct was not culpable conduct under Rule 55(c)); see also Berthelsen, 907 F.2d at 622 (reversing district court and setting aside default judgment notwithstanding defendant's culpable behavior of actively evading service of process).

Network Solutions did not intend to thwart these proceedings or act in reckless disregard of these proceedings by not filing an answer or otherwise responding to the Complaint. The failure to respond to the Complaint was a result of Plaintiff's failure to serve or otherwise provide a copy of the Complaint, or any other filing  or  order,  to  Network

---

[6] If a contract were formed, that contract would be Network Solutions' Registration Agreement, an example of which is attached as Exhibit 1 to the Declaration of Sherry Proehl. Proehl Decl. ¶ 14. That Agreement limits liability for any dispute under or arising out of the agreement to $500. Exhibit 1, ¶ G. Accordingly, application of this provision would eliminate subject matter jurisdiction of the federal courts. See Hawes v. Network Solutions, Inc.,  Civil Action No. 01-582-A (E.D. Va. Aug. 16, 2001) ("diversity jurisdiction does not exist because the registration agreement does not permit recovery against the registrar to reach the requisite $75,000 jurisdictional amount") (attached hereto as Exhibit D). Moreover, that contract has a forum selection clause that requires all disputes under or arising out of the agreement to be brought in the courts of the Commonwealth of Virginia. Exhibit 1 ¶ P; See, e.g. Weber v. National Football League, 112 F.Supp. 2d 667 (N.D. Ohio 2000).

[7] In fact, Plaintiff currently is the registrant of the myhomesforsale.com domain name and has been since on or about February, 1999. Proehl Decl. ¶ 17, 24. Moreover, the myhomesforslaebyowner.com and myhomesforsalebyowner.net domain names are available for registration. Network Solutions so informed Plaintiff on February 13, 2002. Proehl Decl. ¶ 27. Network Solutions offered to register those domain names for Plaintiff. Plaintiff, however, rejected the offer, stating that she instead wanted to pursue damages, contrary to the request for relief in her Complaint. Proehl Decl. ¶ 27; see also Letter sent to Plaintiff by Network Solutions' counsel (attached as Exhibit E).

KERR, RUSSELL
AND WEBER, PLC

11

Solutions.   The only documents Network Solutions even received in this case were a Summons, without a Complaint, and a Notice of Hearing for Default.   Therefore, Network Solutions' failure to respond was not willful and now that it has notice, it is prepared to respond to the Complaint.   Accordingly, Network Solutions has demonstrated good cause for this Court to set aside the default entered in this matter.

## III.

### CONCLUSION

For the foregoing reasons, Network Solutions respectfully requests that this Court enter an Order setting aside the default entered against it, and granting it leave to answer or otherwise respond to the Complaint.

KERR, RUSSELL AND WEBER, PLC


By: _William A. Sankbeil (P19882)_
William A. Sankbeil (P19882)
Panagiota T. Pozios (P61735)
Attorneys for Defendant
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
(313) 961-0200

Of Counsel:

Brian A. Davis
Litigation Counsel
Network Solutions, Inc.
21355 Ridgetop Circle
Dulles, VA 20166

Dated: February 27, 2002

KERR, RUSSELL
AND WEBER, PLC

f:\users\ptp\sankbeil\brief3.doc

12

**DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT**

JUDITH WOLVEN,

      Plaintiff

                                            Case No. 01-713401

v.                                         Hon. John Corbett O'Meara

NETWORK SOLUTIONS, INC.,

      Defendant

_____/

**CERTIFICATE OF SERVICE**

    This is to certify that a true and correct copy of the foregoing has been forwarded to Judith Wolven, 17459 Washington Ct., Macomb, Michigan 48044 via hand delivery and Federal Express (N0. 833302028280) on this 27th day of February, 2002.

                                                  _____
                                          Panagiota T. Pozios

KERR, RUSSELL
AND WEBER, PLC

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED